This case raises three issues. The first is whether the time limit for filing special motions to reopen under the Nicaraguan Adjustment and Central American Relief Act can be equitably tolled. The second is whether the immigration judge abused her discretion in denying Petitioner Aldolfo Abillo De Leon's motion to reopen is untimely under Section 203 of NICARA and not equitably tolling the time limit for filing a motion to reopen. And the third is whether even assuming that the time limit for filing motions to reopen under NICARA is jurisdictional, the circumstances of this case present unique circumstances meriting tolling of the time limit. First, equitable tolling applies to Section 203 of NICARA. There's a presumption of equitable tolling built into the law, and that presumption remains unrebutted by the government. How do you see that working in this case? We know what the rules are. First of all, there's an underlying presumption that equitable tolling is applicable in circumstances such as this. And because the Section 203 of NICARA is silent as to whether equitable tolling... How does it work, though? Clock it out for us on the calendar. How does it work? Well... One equitable tolling. Tell us how it works. Well, NICARA sets a time limit for filing... How does it work in this case? Well, on September 11, 1998, that's when the applications were due. However, because in given the... And one day before... One day before... Your client said, let's file a motion to reopen. Yes. So the way I understand it, even if you get tolling, you get tolling for one day. Well, we would argue that he gets to toll the time limitation until he can file his application because of the unique circumstances of this case. Well, what's unique? Well, he was defrauded by a notary posing as an attorney. So he should be given time in order to rectify that situation, in order to bring his petition to reopen. The unique circumstances of this case is that there is an immigrant who, as this court has recognized, is extremely vulnerable when under situations where they're going to be deported. And this immigrant did his best in order to find out what he needed to do in order to  And what I'm trying to say here is that had it not been for this notary's fraud, his application would have been timely. It would have been filed September 10, 1998. And all of the delay that occurred afterwards is a direct result of the fraud of the notary. Well, there are all kinds of mistakes and bad things done by notarios. And they miss a million. But if you were writing this to make it, we can't just write a blanket, everybody who was injured by, who misses a deadline because the conduct of a notary has the statute told. So what would you focus on as the unique aspect here, if you were writing? Well, similar to the circumstances in Lopez and also circumstances in Rodriguez, Lurries and Varela v. INS, Petitioner's case is that he went to the notary. He asked him to file an application under NACARA. He paid him $100 to file the application. And he believed that the notary was going to timely file the application. He, as in Lopez and in Rodriguez, Lurries, followed up with the attorney he thought he hired and inquired whether his petition was filed. He was assured by this notary, whom he trusted to be an attorney, that an application was pending. So as in those cases, he diligently followed up. And when he finally got suspicions that perhaps his application was not filed, he went to the immigration court to follow up and see what was happening with his application. At that point, he discovered that the clerk had indicated that maybe something hadn't been filed, but that he should file a FOIA request to determine what had exactly happened in his case. And so then he went the further step of even filing a FOIA request, which he did. And he waited four months to see what had happened. And at that point, he discovered that nothing had been done. Was nothing done, or was it the wrong thing? Nothing was done. Nothing was done. And so at this point, keep in mind this is an immigrant who has – who's under deportation hearing – or a deportation order and is in this vulnerable position. He then has to find another attorney to see what he can do in order to rectify this problem in order to get his application before the court and file all the – and follow the necessary procedures. And he did that. And he followed up and wrote a letter to the attorney and filed a complaint with the bar explaining what had happened. And then he filed this application to reopen under arguing the merits – arguing the issues that we have just briefed in terms of equitable tolling. And he paid the notario how much again? He paid him $100 to file his application. And there's a copy of the check. He was told that – he was told that the application was filed. He was. And then when he didn't hear anything, he questioned this notario again. And did the notario again say that he'd taken care of everything? He did. He gave him assurances that he had filed an application. He also would request additional money from the petitioner. So he could look into it? He did. So he would assure him that the application was filed. And then he would subsequently ask for additional money if the petitioner wanted him to do more. And since he had said that the application was pending, there was no need to pay him more, he felt, to follow up. However, after months of not getting a result, the petitioner took it into his own hands and went to the court himself directly, taking that extra step to find out what had happened. He was told to file – suggested he file his Freedom of Information request. Right. And as far as he knows, that's what he's supposed to do, because he's going to the court to ask them what he should do, and the clerk at the court told him file a FOIA request. And that's exactly what he did. So he got – that was bad advice? Exactly. And he's being uneducated in these matters. So he got a double dose. Exactly. He, being uneducated in these matters, believed that that's what he was supposed to do, and he did exactly as he was told. Okay. I think we should hear – are there any further questions? I think we'd like to hear from the government. You have about two minutes. May it please the Court, good morning. My name is Jason Patil, and I represent the Respondent in this case. The petitioner entered the United States without inspection in 1988. The immigration judge denied his application for asylum in 1989. In 1990, the Board of Immigration Appeals dismissed his appeal but granted him the privilege of voluntary departure and entered an alternate order of deportation. Petitioner chose not to appeal that final order to this Court, moved locally within but never departed the United States, and in 2000, some 10 years later, filed a special motion to reopen, the decision on which is the subject of the instant petition for review. Well, there was a statute filed, wasn't there? Yeah. The statute passed it. It's not as if it was just – The CARA came under operation. Correct. And I'll address that in turn, Your Honor. You are correct. This petition for review prevents the overarching question of whether the immigration judge abused her discretion in denying petitioner's special motion to reopen proceedings under Section 203C of NACARA, which created a highly specialized, limited-duration program for select groups. Yeah, it was a humane effort. It had a humane intent, didn't it? The purpose of NACARA, as set forth fully in the petitioner's brief, is to Well, I could. is to create a gap-filling measure between old law and the new law. And to address the second issue that Petitioner raises first, to clock out the time, I'd like to address that. And under this Court's test, the unbiased Court's test in Soka Gonzalez v. INS, in tolling statutes of limitation, courts have typically assumed that the event that tolls the statute simply stops the clock until the occurrence of a later event that permits the statute to resume running. In this case, as noted, Petitioner waited until the 239th day of a 240-day period, which means that the clock was stopped if, assuming tolling, which I'll get to, that there was one day left on that clock. And by September 1999, that is the date that the immigration judge finds that the petitioner had sufficient facts of his claim, for it was at that point, having received no written verification from the notary or notice from the court, he gave up ever contacting that person and went to the immigration court, where he found that there was no record of any motion filed. Now, I would take issue with the factual representation that he was told he must file a FOIA request. The petitioner was told he could file a FOIA request, and he did. But in September of 1999, the petitioner's own affidavit says the court said, we have no record whatsoever of a motion to reopen having been filed, and it is also in September 1999, as indicated. Kennedy, the Court didn't say that. The Court didn't. The Court didn't say that. Who said that? The court clerk. Clerk. Clerk. Clerk. Clerk. Right. You know, and the records are all kind of screwed up in these places, and a lot of stuff doesn't get in a file. Well, there's no indication of record that there was anything messed up. And, in fact, it's borne out there was no mistake. And in September of 1999, as evidenced by the petitioner's own affidavit, the petitioner at that point had given up on even that content. So what is your position? How long does the statute get told? The statute would be told from September 10th of 1998, when the fraud of the notary took place, up until the time where the petitioner had noticed that no motion had been filed in September of 99. When the clerk told him, I can't find anything. Right. And even assuming in the alternative that the FOIA request response is determinative of the date, assuming equitable tolling applies, that means in April of 2000, the statute begins running. Now, for the first time, some arguments are being made with respect to this particular petitioner about how it is a vulnerable immigrant and had to find assistance. I would note that the petitioner used the same attorney in filing the special NACARA motion to reopen that this petitioner used before the immigration court in 1999 and before the Board of Immigration Appeals in 2000 in defending the original applications for relief. And the argument that this petitioner had some, you know, there was some difficulty or unique circumstance which justifies further tolling than the unbound courts test in Soka Gonzales, there are no facts in the petitioner's case. And so, in addition to tolling for the time, as per the misconduct of the notary. Kennedy's case is exciting, don't you? I — thank you, Your Honor. We have the situation here, and again, an unfortunate situation, because the alien petitioner waited to the 239th day of a 240-day period, and then because, after having sufficient facts to know he had a claim, waited either, if you accept the Respondent's position, from September of 99 to 10 to 11 months later, or even accepting the facts completely favorable to the petitioner, of the April date, waited four-plus months to file the special NACARA motion to reopen. And there is no factual basis or legal theory that says, in the Ninth Circuit, you can get Soka Gonzales plus something else. Now, Petitioner has a claim that there's a third legal issue in this case, and cites a number of cases dealing with equitable estoppel, where the government has engaged in some sort of misconduct. As set forth in the Respondent's brief at page 28, note 10, those cases are distinguished, and we argue there has been no misconduct by the Court in this case that would justify an equitable estoppel argument. Now, turning from that plot-stopping analysis to Petitioner's prime — sorry, Respondent's primary argument. I'm having a little trouble, because Soka, I think, was intended to be pretty — to enable, of course, to exercise a fairly lenient hand here, but I defer to its author. So I'm just — You got it right. I'm not quite sure how — just — if you just tell me how — why this is clearly distinguishable from what we said, and it's an en banc opinion for the Court. It's — it has a dissent that says, you know, we've got to be very tight about this, and we shouldn't be so generous, and this is jurisdictional and all this. But how are you distinguishing Soka from Petitioner? Well, with respect to the primary issue of whether the statute can be told, there are two grounds for this, and the first of which is that Soka Gonzales dealt with the 90-day period for filing motions to reopen set out in 8 CFR 3.2, and that codification has changed over time. But in that case, that general motion to reopen provision in Soka Gonzales recognized that Congress, in delegating authority over the general class of motions to reopen, instructed the Attorney General to consider exceptions in the interest of justice, authorizing flexibility in the application of deadlines. That's Soka at 1190. Now, the Court in Soka said that if Congress really intended the filing deadline in motions to reopen to be jurisdictional, it would not have granted the Attorney General such broad flexibility. By stark contrast, Section 203 of NACARA provides no flexibility as to the Attorney General in the creation of exceptions to the 240-day time period, unlike the general class of motions to reopen, in which Congress authorized discretionary flexibility and, in fact, the Attorney General created four general categories of exceptions. But how equitable a stop was based on the principle that you've got a fairly inflexible deadline in most circumstances? Well, the argument set forth in, and I won't labor it, but the argument set forth in Respondent's brief is that this Court, which has assessed whether NACARA creates simply a statute of limitation subject to tolling or a statute of repose, sets forth the following reasoning or test. In Munoz v. Ashcroft, it says if a statute cuts off a cause of action at a certain time, irrespective of individual circumstances, it is a statute of repose that cannot be equitably told. And I would draw your attention to the language of Section 203 of NACARA, and I will just quote it in part. The Attorney General shall designate a specific time period in which all such motions to reopen are required to be filed. The period shall begin not later than 60 days after the date of the enactment of NACARA and shall extend for a period not to exceed 240 days. But you're referring to Notario, who's committing fraud, and he's been misled, and he's done everything that he could possibly do in order to meet those deadlines. A statute of repose is not subject to equitable tolling. The government's position is that if there's a good reason to believe that Congress did not. These Notarios, they're – they represent people before the immigration court, right? I mean, they're authorized to do that. They're permitted to do that. Your Honor, I'm not fully prepared to address that issue. That has been briefed. The Notario here, the government concedes, acted badly. And if this Court finds that tolling applies, the period for which the statute is told should be told in accordance with its – all of the cases cited by the Petitioner, including Lopez. And in Sokup, Gonzalez, and in Lopez, you have alien Petitioners who act within the period, you know, say Sokup, told for 90 days, Petitioner files within 30 days. Lopez, the alien Petitioner files within 16 days. There's no case in this circuit that says you can toll the period due to fraud and then tack on four months or 10 months. Well, what I was suggesting was that the – as far as the immigration court is concerned, that the requirements for representing applicants are very, very minimal and very lax. And as I understand it, even a disbarred attorney can represent clients before the immigration court. Did you know that? I – that is not an issue which the government briefed in this case. Okay. Well, I think we – yeah. Okay. I think maybe we ought to give your adversary the minute that she's entitled to, if she wishes to use it, or two minutes. The Respondent thanks the Court for its time. Thank you. Petitioner, rather, right? I don't know who is who here. Go ahead. I just wanted to address a couple things that the government said. First was that equitable tolling does apply in this case because Section 203 of NACARA, as enacted, is silent as to whether equitable tolling is applicable or not, although it sets out a timeframe for when applications should be filed. It is completely silent on whether equitable tolling is applicable. Unlike cases like – Are there any limits to your theory? I mean, how long would we allow something like this to go on before somebody would conclude that it was too long? How would we articulate a principled basis to make that decision? Well, I think it would depend on the circumstances of each case so that you would have to bring it within a reasonable time. What explains the delay in this case, even over and above giving your client until April? Well, as I was saying before, Petitioner filed his motion to reopen on September 10th, 1998, within the period under which you had to file an application to reopen. The result – all of his delay was the direct result of ineffective assistance of counsel, actually, in this case a notary posing as an attorney, telling him – You're saying there's no reason the next day that he couldn't have done something instead of waiting all the time that he waited? I think that he wasn't capable of doing something the next day. How do we know that? Because of the circumstances of this case. And I think that the case – even in terms of equitable tolling, you always look at the circumstances of each case. And even if this were viewed as a jurisdictional limit, one looks at the unique circumstances of this case to determine that Petitioner filed his application and was diligent in filing that application. All of the delay was the result of the notary defrauding him and then wrong information he got from the clerk. And also – Circumstances beyond his control. Exactly. And once he even did hire an attorney to help him file this motion to reopen, he's at the mercy of that attorney to file that application. He's not capable of knowing what exactly he needed to do. That's why he sought the help of an attorney to tell him what he should do. And that this attorney took however long to file his application isn't a result of – isn't the result of a lack of diligence on his part. And then one other point I wanted to address was the fact that if this is a – Does the record show when he contacted the last attorney? It doesn't say – it doesn't show when he contacted the last attorney, but it does show that he had been doing things before August 3rd, I believe, is when he filed his – the motion to reopen. There's stuff in July indicating that they were working on this in order to get it filed. So the fact that it was filed in August wasn't a lack of diligence on petitioner's part. After the 10-year hiatus, what prompted him to go in and seek relief under the new law? Well, the new law prompted him to seek relief under the current – Could he do that on his own? I don't know. The record isn't clear on that. If he's competent to do that, why isn't he competent to file a motion to reopen? I think that perhaps he heard about it, and that's why he sought the help of an attorney to help him file it. And just with respect to the last issue about the jurisdictional time limit, I just wanted to say that if it is viewed as a jurisdictional time limit, the September 11, 1998, cutoff date, then under unique circumstances, this Court has held that we can even told jurisdictional time limits. And contrary to what the government was saying about official misconduct, it's not limited to cases of official misconduct. There is a case in which a jurisdictional time limit was told because the forms were incorrect on – on papers that needed to be filed in court. And so in that case, it wasn't – and that was Chomsky v. INS. Was he represented by counsel when he went through the entire asylum procedure? For most of the parts of it. You mean way back – way back when he – This just doesn't sound to me like somebody who's unfamiliar with the process. He's been through it. Well, I think he was – oh, I'm sorry. I was just going to say he was unfamiliar with the Nicara process, which is a completely different thing than the asylum process. Okay.  You have used your time. Okay. Thank you. Thank you for your time. The case just argued is submitted for decision. We'll hear the next case, which is Hilarion v. Apollonar v. Gonzalez. My Spanish is terrible, and I apologize.
judges: Schroeder, Pregerson, Trott